46 F.3d 1151
 Prod.Liab.Rep. (CCH) P 14,147
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 
 Arlitha J. HENDERSON, Plaintiff-Appellee,
v.
SUNBEAM CORPORATION, Sears, Roebuck and Company,
Defendants-Appellants.
 No. 93-6391.
 United States Court of Appeals, Tenth Circuit.
 Feb. 1, 1995.
 Before ANDERSON, BALDOCK, and BRORBY, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Defendants appeal from an adverse judgment entered by the district court on a jury verdict for plaintiff in this diversity action decided under Oklahoma products liability law. The jury found defendants liable for property lost in a fire allegedly caused by an electric blanket they had manufactured and sold to plaintiff some two years earlier. Defendants moved for judgment as a matter of law under Fed.R.Civ.P. 50, arguing insufficiency of the evidence, and for new a trial under Fed.R.Civ.P. 59, arguing the verdict was against the weight of the evidence. The district court denied the motions, and defendants appealed.
 
 
 3
 We review the denial of defendants' Rule 50 motion de novo, finding error only if the evidence points but one way and is susceptible to no reasonable inferences supporting plaintiff's case. FDIC v. United Pac. Ins. Co., 20 F.3d 1070, 1079 (10th Cir.1994). We review the Rule 59 determination for an abuse of discretion, "focus[ing] on whether the verdict is clearly, decidedly, or overwhelmingly against the weight of the evidence." Richardson v. City of Albuquerque, 857 F.2d 727, 730 (10th Cir.1988)(internal quotation omitted). Discerning no such error or abuse of discretion, we affirm.
 
 
 4
 A product liability claim in Oklahoma requires proof that (1)a defective product caused the plaintiff's injury; (2)the defect existed in the product at the time it left the hands of the manufacturer or seller; and (3)the defect made the product unreasonably dangerous to the plaintiff or her property. Dutsch v. Sea Ray Boats, Inc., 845 P.2d 187, 190 (Okla.1992); Kirkland v. General Motors Corp., 521 P.2d 1353, 1363 (Okla.1974). Defendants contend plaintiff's trial proof, consisting of circumstantial evidence and expert opinion testimony, was legally insufficient to establish that a defect in their electric blanket caused the fire at plaintiff's home. Of course, this type of evidence has always been considered an acceptable, indeed often necessary, means of proof in product cases, see Kirkland, 521 P.2d at 1363-64; Tigert v. Admiral Corp., 612 P.2d 1381, 1383 (Okla. Ct.App.1979), as modified on denial of cert. (May 23, 1980), so defendants' objection must go to the weight or probative value of plaintiff's evidence, rather than simply its indirect character. Likewise, in the face of relatively recent authority recognizing the validity of drawing inferences from inferential premises, see, e.g., McConnell v. Oklahoma Gas & Elec. Co., 563 P.2d 632, 634 (Okla.1977); Red Eagle Oil Co. v. ITT Eason Oil Co., 693 P.2d 1280, 1282 (Okla. Ct.App.1984), defendants' objections in this regard must go to the validity of specific inferences involved here, rather than to the inferential process per se.[2]
 
 
 5
 The parties' stipulations focused the search for the fire's cause on an electrical source in plaintiff's bedroom, specifically on or near the bed. Plaintiff's fire origin expert, L. D. Hallman, testified at length about his first-hand examination of the scene, including the electrical appliances therein, and opined on the basis of his observations that the electric blanket started the fire. This general conclusion was also endorsed by plaintiff's other expert witness, Dr. Croenwett, who specializes in the analysis of malfunctions in electrical devices.
 
 
 6
 Dr. Croenwett went on to explain what he considered to be the defective component of the blanket and how that defect related causally to the fire. Specifically, he blamed a broken connection in the heating element, which arced and ignited the mantle fabric. His reconstruction of the accident, like that offered by Hallman with which it substantially agreed, was tied to the physical evidence and testimony adduced at trial, and his specification of the design defect responsible was buttressed by testimony that the fire could have been avoided by inclusion of a safety device costing less than $2.50.
 
 
 7
 Defendants make much of the fact that Hallman found a different defect responsible for the initial arc igniting the blanket, faulting the control unit instead of the heating element in the mantle. The jury, however, was free to believe either expert--or, for that matter, to side with defendants' experts, who blamed the bed vibrator[3]--and, indeed, was specifically instructed to that effect. See generally Moe v. Avions Marcel Dassault-Breguet Aviation, 727 F.2d 917, 928-30 (10th Cir.), cert. denied, 469 U.S. 853 (1984). A jury question is created, not negated, by disagreement among experts, FDIC v. Clark, 978 F.2d 1541, 1553 n. 18 (10th Cir.1992), and the fact that plaintiff's own experts disagreed did not alter the jury's authority to resolve the issue consistently with Dr. Croenwett's view,[4] cf. Poertner v. Swearingen, 695 F.2d 435, 437 (10th Cir.1982)(conflict in expert testimony offered by plaintiff raises issue for jury to resolve). We focus here on Dr. Croenwett's opinions, as he more clearly addressed the contested elements of plaintiff's products claim, including the specification of a defect existing at the time of manufacture, see Hurd v. American Hoist & Derrick Co., 734 F.2d 495, 500 nn. 4 & 5 (10th Cir.1984)(Oklahoma products case holding expert opinion of design defect "sufficient to establish that a defect existed in the product when it left the manufacturer").
 
 
 8
 Defendants contend that the testimony of Dr. Croenwett, who could not identify precisely which connection in the mantle's wiring grid had failed, was, for that reason, legally insufficient to provide a basis for the jury's finding of liability. The case law favors plaintiff on this critical point. Where, as here, an allegedly defective product has largely destroyed itself, making direct evidence of the precise operative defect unavailable, the plaintiff may prove her case with circumstantial evidence, typically including expert testimony, even though she "is unable to point an accusing finger at a particular defective component." Tigert, 612 P.2d at 1384(internal quotation omitted); see Barber v. General Elec. Co., 648 F.2d 1272, 1277-78 (10th Cir.1981)(following Tigert ).
 
 
 9
 We have reviewed defendants' various contentions and found them to be meritless. The district court considered the jury's verdict consistent with the evidence presented before it, and nothing urged on this appeal persuades us otherwise.
 
 
 10
 The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 We say "recent authority" in comparison to the sixty year-old cases discrediting inferential premises cited in defendants' opening brief. See Opening Brief for Appellants at 16. In their reply brief, defendants appear to acknowledge the controlling law noted above and merely dispute the soundness of particular inferences. See Reply Brief for Appellants at 4-6
 
 
 [3]
 The parties stipulated that the vibrator's motor would have to have been on to cause the fire. However, the motor ran for only fifteen-minutes on its timer, and the fire at plaintiff's house was first observed nearly three hours after she left in the morning. Plaintiff's experts considered the obvious timing discrepancy a compelling common-sense corroboration of their common opinion that the vibrator did not cause the fire. Defendants' experts offered no explanation for the delay
 
 
 [4]
 There is an important distinction to be drawn here between equivocation by a party's only expert and disagreement among her multiple experts. The former may not provide probative evidence, if the expert never espouses a definite opinion; the latter, however, clearly does provide probative evidence, albeit of conflicting positions that must be assessed by the trier of fact