772 F.2d 662
 EAST CENTRAL ELECTRIC COOPERATIVE, an Oklahoma corporation,
Defendant-Third Party Plaintiff-Appellee,
v.
ROBERT GORDON EQUIPMENT, INC., an Oklahoma corporation,
Third Party Defendant-Appellant.
Oklahoma Gas and Electric Company, Amicus Curiae.
 No. 83-2323.
 United States Court of Appeals,
Tenth Circuit.
 Sept. 17, 1985.
 
 Robert D. Tomlinson, Oklahoma City, Okl. (Ned Bastow, Oklahoma City, Okl., with him on reply brief), of McKinney, Stringer & Webster, Oklahoma City, Okl., for appellant.
 D. Lynn Babb, Oklahoma City, Okl. (D.C. Johnston, Jr., Oklahoma City, Okl., with him on brief), for appellee.
 Richard E. Coulson, H.D. Binns, Jr., and James N. Atkins of Rainey, Ross, Rice and Binns, Oklahoma City, Okl., on brief for amicus curiae.
 Before McKAY, BREITENSTEIN and MOORE, Circuit Judges.
 McKAY, Circuit Judge.
 
 
 1
 An employee of the defendant Robert Gordon Equipment Company was electrocuted when a company gin pole truck near which he was working came in contact with an overhead electric line owned and maintained by plaintiff East Central Electric Cooperative. The plaintiff East Central settled a claim brought against it by the estate of the defendant's employee and then brought this action for contribution and indemnification based on Oklahoma Stat.Ann. tit. 63, Secs. 981-87 (West 1984). Section 981 prohibits any person, firm, corporation or association from performing or permitting activity during which a person or employee may be placed within six feet of any high voltage overhead electrical line. Section 984 provides that any employer who violates this provision shall be liable to the owner or operator of the high voltage line "for all liability incurred by such owner or operator as a result of any such accidental contact." The undisputed facts at trial showed that this statute had been violated. The district court therefore directed a verdict in favor of East Central for full indemnity of the liability incurred as a result of the accident, even though the high voltage lines were in violation of the National Electric Safety Code in that the power lines were a foot and a half lower than required by the code. Despite its directed verdict for full indemnity, the court allowed the jury to return a verdict on degrees of fault. The jury found the accident to have been 80 per cent the result of East Central's violation of the National Electric Safety Code and 20 per cent the result of Robert Gordon Equipment Company's violation of the six-foot rule.
 
 
 2
 On appeal Robert Gordon raises several challenges to the district court's directed verdict. First, Robert Gordon argues that the principles of comparative negligence and of contribution among joint tort feasors--which had not been adopted by Oklahoma at the time section 984 was enacted, but since have been--modify the application of section 984 so as to preclude the electric company from escaping liability for what was indisputably negligence on its part. Robert Gordon argues that, by adopting statutes implementing contribution among joint tort feasors and comparative negligence, Oklahoma has made a shift in the basic framework of its tort law. The defendant argues that when section 984 is read in light of this basic shift it must be given a different interpretation from what it appears to plainly mean.
 
 
 3
 On the question of the statute's asserted incongruance with the more recently adopted comparative negligence and contribution statute, the legislature provided, in enacting the latter statute, that "[t]his act does not impair any right of indemnity under existing law. When one tort feasor is entitled to indemnity from another, the right of the indemnity obligee is for indemnity and not contribution, and the indemnity obligor is not entitled to contribution from the obligee for any portion of his indemnity obligation." Okla.Stat.Ann. tit. 12 Sec. 832(F) (West Supp.1984). Since it is undisputed that section 984 provides that the utility company is entitled to indemnity for all liability incurred as a result of the violation of the Act, if and to the extent section 984 applies in this case, it does not conflict with the contribution statute, and Robert Gordon is not entitled to any contribution from East Central.
 
 
 4
 The further question arises, however, whether and to what extent section 984 applies to the facts of this case. While the statute could be read to immunize electrical companies from any liability whenever a violation of the six-foot rule has contributed to an injury no matter how grossly negligent the company had been in maintaining its property, the better interpretation, as East Central correctly points out, is that the statute entitles it to indemnity only for liability incurred "on account of violations of the Act." We are in agreement with this interpretation of section 984. This interpretation of the Act is bolstered by Oklahoma's recognition of the general rule that a plaintiff responsible for a violation of law cannot recover damages where such violation contributed as a proximate cause to the injury of which he complains. Kimery v. Public Service Co. of Oklahoma, 622 P.2d 1066, 1070 n. 3 (Okla.1980). East Central as plaintiff in this law suit is responsible for violation of the federal regulations on height of electric power lines, and it would be improper to allow plaintiff in this case to recover against Robert Gordon that portion of the liability which resulted from its violation of the federal law.
 
 
 5
 The jury, by its verdict, found that this accident was caused 80 per cent by East Central's failure to comply with the federal regulations and only 20 per cent by Robert Gordon's failure to comply with the six-foot rule. Therefore, only 20 per cent of East Central's liability resulted from violations of the Act.
 
 
 6
 The judgment of the district court is modified. East Central is entitled to recover from Robert Gordon only 20 per cent of the total liability incurred as a result of this unfortunate accident.
 
 JOHN P. MOORE, Circuit Judge, dissenting:
 
 7
 I must respectfully dissent from the final conclusion reached by the court. While I concur in that part of the opinion holding Okla.Stat.Ann. tit. 63, Sec. 984 (West 1984) is not affected by the state's adoption of subsequent statutes relating to contribution and comparative negligence, I cannot agree with the broad reading the majority gives Sec. 984 itself. In my opinion, both the Oklahoma legislature and its courts have made clear that it is the public policy of the state to provide to its power companies the absolute right of indemnification for damages sustained by someone coming into contact with their power lines. I further believe that if that public policy is to be changed, this case is not the appropriate vehicle for that purpose.
 
 
 8
 The basis of my principal concern with the holding reached by the court is the quantum leap negotiated between the conclusion that the Oklahoma contribution statute, Okla.Stat.Ann. tit. 12, Sec. 832(F) (West Supp.1984), does not abrogate existing rights of indemnification, such as the right provided by Sec. 984, to the conclusion that Sec. 984 cannot apply in a situation in which a utility company is a "joint tort-feasor." The court reaches this result by reading into Sec. 984 a limitation on the right of recovery provided in that section. The court concludes that when an injury may be attributed to an alleged negligent act of the power company unrelated to the violation of Sec. 981, the Sec. 984 right of indemnification must be reduced. No such limitation was enacted by the Oklahoma legislature, however, and the notion that the statute should be read in this fashion is not consistent with the interpretation of the Oklahoma Supreme Court.
 
 
 9
 In Kimery v. Public Service Co. of Oklahoma, 622 P.2d 1066 (Okla.1980), the court stated Oklahoma's public policy as determined by its legislature:
 
 
 10
 [I]t is far more effective and in the public interest to impose this burden [of reducing injuries involving electricity] on those persons who engage in activities near power lines than to require the utilities to maintain constant surveillance over the thousands of miles of power lines which it maintains.
 
 
 11
 Id. at 1071. It is particularly noteworthy that this statement was made by the court in a case in which the plaintiff claimed the utility was negligent in locating its lines (a claim not unlike that of the defendant in this case). This claim of negligence was ignored by the Kimery court in its decision upholding the right of the utility company to the Sec. 984 indemnity. Accordingly, it must follow that the Oklahoma court interprets its statute to apply even in situations in which the utility company is alleged to be negligent.
 
 
 12
 It also strikes me that this court's conclusion nullifies specific statutory language requiring indemnification. As East Central pointed out, Sec. 984 states:
 
 
 13
 [T]he person, firm, corporation or association violating the provisions of this Act shall be liable to the owner or operator of such high voltage line or conductor for all damage incurred by such owner or operator as a result of any such accidental contact.
 
 
 14
 (Emphasis added.) The effect of this court's opinion is to alter this provision by referentially substituting the word "all" with the word "some" and by eliminating the underscored phrase. I find nothing in reason or in the cited references that would justify this surgery.
 
 
 15
 Another matter concerns me here. The court has concluded the jury found the injury was caused 80% by East Central's failure to comply with the National Electric Code. The record does not justify this conclusion. First, even though the trial judge concluded the application of Sec. 984 required the entry of a directed verdict in favor of East Central, he perceived the possibility that this court might otherwise interpret Sec. 984 and allow consideration of comparative negligence. Therefore, over the strong objections of East Central, made before and after submission to the jury, the judge decided sua sponte to ask the jury to decide whether any act of East Central contributed to the death of Robert Gordon's employee.
 
 
 16
 Assuming the jury had something before it to consider, an assumption I find unsupportable, the jury was not instructed how East Central might have been negligent. While there were instructions on the general theories of negligence, there were none which related a violation of the National Electric Code to an act of negligence. Accordingly, I cannot agree from the record presently before us that the jury made a finding that 80% of the fault of the injury resulted from East Central's negligent construction or maintenance of its power line.[1]
 
 
 17
 Finally, I believe this result is contrary to Oklahoma law established in Porter v. Norton-Stuart Pontiac-Cadillac, 405 P.2d 109 (Okla.1965). In that case, the Oklahoma court held a tortfeasor could recover indemnification when it " 'was only technically or constructively at fault, as from failure to perform some legal duty, and the negligent or wrongful act of the party from whom indemnity was sought was the primary or proximate cause of the injury.' " Porter v. Norton-Stuart Pontiac-Cadillac, supra, at 113 (citing 42 C.J.S. Sec. 27b). The court elaborated: " 'if the negligence complained of merely furnishes a condition by which the injury was possible and a subsequent act caused the injury, the existence of such condition is not the proximate cause of the injury (emphasis supplied).' " Porter v. Norton-Stuart Pontiac-Cadillac, supra, at 114 (citing Cheatham v. Van Dalsem, 350 P.2d 593, 595 (Okla.1960). Thus, as in this case, where the only fault was in failing to construct or maintain the power line at a particular height--thus making the injury possible --the fault was only constructive. At the same time, the proximate cause of the injury was the negligent act of coming into contact with the power line--thus making the injury actual. In such a case, Oklahoma law would permit contribution by Robert Gordon to East Central. Accordingly, I would affirm the judgment of the district court.
 
 
 
 [1]
 I have intentionally equivocated between negligent construction and negligent maintenance. Although the court has stated the jury found East Central was negligent in the construction of its line, that understates the case somewhat. Throughout the case, from pleading to proof, Robert Gordon always contended that East Central was negligent in both the construction and the maintenance of its line. Indeed, its only witness concluded but for East Central's failure to conduct required tri-annual inspections of the line, this accident would not have occurred. Moreover, the interrogatory submitted to the jury only required it to determine the "percentages of the parties' respective acts of actionable negligence." Thus, it made no findings at all relative to either the erection or maintenance of the line. While East Central never denied the line was too low for safety at the time of the accident, it made no other concessions